IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 07-cv-00839-LTB-BNB

INFANT SWIMMING RESEARCH, INC.,

        Plaintiff,

v.

FAEGRE & BENSON, LLP,
MARK FISCHER,
JUDY HEUMANN, and
NORMAN HEUMANN,

        Defendants.

___

ORDER
___

        This matter is before me on the following motions filed by Defendant Faegre & Benson, LLP, against Plaintiff, Infant Swimming Research, Inc.: 1) Motion to Dismiss All Claims Pursuant to Fed. R. Civ. P. 12(b)(6) [**Doc # 11**]; and 2) Motion for Summary Judgment [**Doc #32**]. Oral arguments will not materially aid in the resolution of these motions. After consideration of the parties' briefs and related attachments, I GRANT IN PART and DENY IN PART the Motion to Dismiss and, as such, I dismiss Infant Swimming Research, Inc.'s Ninth and Tenth Claims for Relief filed against Faegre & Benson. I also GRANT IN PART the Motion for Summary Judgment and, as such, summary judgment enters in favor Faegre & Benson on Infant Swimming Research, Inc.'s First, Second, Third, Fourth, Fifth, Seventh, Eighth and Eleventh Claims for Relief.

## I. FACTS

In its complaint, Plaintiff, Infant Swimming Research, Inc. (hereafter "ISR"), alleges as follows. On February 2, 2004, a jury verdict was rendered in favor of ISR and against Defendant Judy Heumann in the matter of <u>Harvey Barnett, Inc., et. al. v. Ann Shidler, Judy Heumann, et. al.</u>, 00-cv-00731 (the "prior action"). On April 28, 2004, the judgment in that case was recorded with the Boulder County Clerk and Recorder which acted as a lien in favor of ISR and against real property owned by Defendant Heumann located in Boulder County.

ISR alleges that approximately a year later, on April 26, 2005, "Defendants fabricated a Certificate Of Stay Of Judgment/Release Of Judgment Lien" which purports to be an order issued in the prior action by Judge Phillip S. Figa, a United States District Judge. It is undisputed that this order was not issued by Judge Figa but was, in fact, fabricated (the "fabricated order"). The fabricated order was filed with the Boulder County Clerk and Recorder which, in turn, fraudulently released ISR's lien on Defendant Heumann's real property. ISR alleges that Heumann was then able to obtain funds in the form of a loan on her real property and, further, that "[s]ome of the funds obtained by use of the Fabricated Order were paid to [Defendant Mark] Fischer and [Defendant] Faegre & Benson." During this time, Defendant Fischer was a partner with Faegre & Benson.

As a result, ISR maintains that Heumann was able to pursue the prior action, "at great expense and damage to ISR," in that the wrongfully-obtained loan funds provided the financial resources to continue the litigation and pay Fischer and Faegre & Benson. ISR subsequently discovered the existence of the fabricated order in March 2007. Fischer then admitted – in a letter to the Court dated April 9, 2007 – that he had forged the fabricated order.

In its amended complaint, ISR provides the following additional factual allegations. In 2004 and 2005, Faegre & Benson was pressuring Fischer to get its bill paid for legal fees defending Heumann in the prior action. "Otherwise, Fischer risked losing his job, his income, and his partnership interest in Faegre [& Benson]." ISR alleges that Heumann had been using her real estate as collateral to secure monies to pay Faegre & Benson, but could no longer do so when the judgment in the prior action was recorded.

In March 2005, a builder filed a lien statement against Heumann's real property which "supported foreclosure by mortgage holders." As a result, "Faegre & Benson intensified its pressure on Fischer to get its bill paid since it was faced with the specter of Heumann's bankruptcy in which Faegre & Benson would likely receive no distribution." ISR further alleges that Fischer then created the fabricated order with the intent to further Faegre & Benson's business, which, in turn, benefitted both him and Heumann.

For two years, from the time of the fabricated order through April 2007, Fischer retained his job and partnership, Faegre & Benson's bill was paid, and Heumann was able to continue building on her real property and avoid foreclosure. Furthermore, Fischer and Faegre & Benson were able to bill more fees pursuing an unsuccessful appeal for Heumann in the prior action. In addition, ISR asserts that multiple Faegre & Benson associates and paralegals worked on the fabricated order, and that two former Faegre & Benson associates who worked on the prior action are no longer practicing law. Therefore, ISR alleges that "[o]ne or more of Faegre & Benson's representatives, other than Fischer and partners, had knowledge of the forged order." ISR concludes that "Faegre & Benson supported the creation of the forged order, Faegre & Benson billed for and was paid for time spent regarding the forged order, and Faegre & Benson

3

knew of the forged order since April 2005, but did nothing except reap its benefits until Fischer admitted his misconduct in April 2007."

After discovering the fabricated order, ISR filed this lawsuit seeking relief for the following claims against Defendant Faegre & Benson: Violation of Colorado Revised Statute Section 38-35-109 (recording fraudulent documents)(First Cause of Action); Fraudulent Transfers (Second Cause of Action); Negligent Supervision (Third Cause of Action); Fraud (Fourth Cause of Action); Negligent Misrepresentation (Fifth Cause of Action); Conspiracy (Seventh Cause of Action); Contempt (Eighth Cause of Action); Declaratory Relief (Ninth Cause of Action); Injunctive Relief (Tenth Cause of Action); and Vicarious Liability (Eleventh Cause of Action). Faegre & Benson is not named as a Defendant in ISR's Sixth Claim for Relief.

## II. MOTION TO DISMISS

Faegre & Benson first moves for dismissal of ISR's claims for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). The motion is considered against the amended complaint. As such, further briefing is unnecessary.

As an initial matter, I reject ISR's request that I should deny Faegre & Benson's motion to dismiss on the basis that it was untimely filed. *See* Plaintiff's Response to Defendant Faegre & Benson LLP's Motion to Dismiss [Doc #16]. ISR's assertion that the motion was not electronically filed until May 18, 2007, is inaccurate. The motion was timely filed on May 17, 2007, but was improperly designated as an "answer" to the complaint. Although Faegre & Benson was required to re-file in order to properly designate the pleading, such "re-filing" does not invalidate the previous filing.

In addition, I also reject ISR's request that I strike or "not consider" Faegre & Benson's

reply brief in support of its motion to dismiss on the basis that it was untimely. *See* Objections to Defendant Faegre & Benson LLP's Reply in Support of Motion to Dismiss the Complaint [Doc #34]. I am not persuaded by ISR's argument that Fed. R. Civ. P. 6(e) – which provides an additional three days of time to file after service – is not applicable to electronic filings. *See* Fed. R. Civ. P. 5(b)(2)(defining service on a represented party as delivering by electronic means); D.C.Colo.L.R. 5.6(c)("[n]othing in the Electronic Case Filing Procedures for the District of Colorado (Civil Cases) alters the rules governing the computation of the deadlines for *filing and service* of documents that are set forth at Fed. R. Civ. P. 6")(emphasis added).

When assessing a motion to dismiss under Rule 12(b)(6), the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996). The Supreme Court has recently ruled that the standard for review previously applied under Fed. R. Civ. P. 12(b)(6) – "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"– is "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Bell Atlantic Corp. v. Twombly*, ____ U.S. ____ , 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007). Although the Supreme Court did not clearly articulate the proper standard for a Fed. R. Civ. P. 12(b)(6) dismissal, its opinion in *Bell Atlantic v. Twombly* and its subsequent opinion in *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), "suggest that courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Alvarado v. KOB-TV, L.L.C.,* 493 F.3d 1210, 1215 FN. 2 (10th Cir. 2007)(*citing Iqbal v. Hasty*, 490 F3d 143 (2d Cir. 2007)).

Under this new "plausibility" standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007)(*citing Bell Atl. Corp. v. Twombly, supra*, 127 S.Ct. at 1960); *see also Alvarado v. KOB-TV, LLC, supra*, 493 F.3d at 1215 ("[w]e look for plausibility in th[e] complaint"). "We must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007)(*quoting Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)). The Tenth Circuit has defined this new standard for reviewing a motion to dismiss as: "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Anderson v. Suiters,* 499 F.3d 1228, 1232 (10th Cir. 2007)(*quoting Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007)).

**A.  Claims Based on Vicarious Liability:**

Faegre & Benson first asserts that ISR has not alleged any facts that would subject it to liability – either under the Colorado Partnership Act or under a theory of *respondeat superior* – for Fischer's actions related to the fabricated order. Faegre & Benson argues that ISR has not alleged facts sufficient to support the conclusion that Fischer was acting in the ordinary course of business, or within his scope of his employment, when he forged the fabricated order. As such, Faegre & Benson seeks dismissal of ISR's claims against it for: Recording fraudulent documents (First Cause of Action); Fraudulent Transfers (Second Cause of Action); Fraud (Fourth Cause of Action); Negligent Misrepresentation (Fifth Cause of Action); Contempt (Eighth Cause of

6

Action); and Vicarious Liability (Eleventh Cause of Action).

In response, ISR first maintains that it adequately alleges that Faegre & Benson, not just Fischer, acted fraudulently and therefore is liable. I agree. Under Fed. R. Civ. P. 12(b)(6), I must view the specific allegations in a complaint as true to determine whether they plausibly support a legal claim for relief; specifically, whether there are enough facts to support all the elements necessary to establish an entitlement to relief under the legal theory proposed. ISR alleges that "Defendants fabricated a Certificate Of Stay Of Judgment/ Release Of Judgment Lien" and that "Defendants filed the Fabricated Order with the Boulder County Clerk and Recorder and thereby fraudulently released ISR's lien on Defendant Judy Heumann's real property." These allegations, when taken as true for the purpose of assessing a challenge for failure to state a claim, are sufficient to "to state a claim to relief that is plausible on its face." *See TON Services v. Qwest*, *supra*, 493 F.3d at 1253. *See also Rohda v. Franklin Life Ins. Co.,* 689 F.Supp. 1034, 1043 - 1044 (D. Colo. 1988)(finding that the plaintiff's claims for outrageous conduct and negligence against opposing counsel survived dismissal because, under Colorado law, an attorney owes a duty to his adversary not to engage in fraudulent or malicious conduct or to commit intentional torts)(*citing Allied Financial Services, Inc. v. Easley*, 676 F.2d 422 (10th Cir.1982)).

In addition, ISR also asserts that Faegre & Benson is liable for Fischer's actions under Colorado partnership law, which provides:

> Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of the other partners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same intent [sic] as the partner so acting or omitting to act.

7

Colo. Rev. Stat. § 7-60-113. Faegre & Benson argues that Fischer's actions here cannot be deemed to be an act committed in the "ordinary course of business." It refers me to cases in which an intentional act was committed by an employee, and the employer was not held vicariously liable. *See e.g. Moses v. Diocese of Colorado*, 863 P.2d 310, 314 (Colo. 1993). It also argues that Fischer's actions were so unusual they could not be foreseeable and, as such, cannot be deemed as occurring in the ordinary course of business. *See* Bromberg & Ribstein On Partnership §§ 4.07(a), 4.07(c); *Kansallis Finance Ltd. v. Fern,* 659 N.E.2d 731 (Mass. 1996).

However, in *Williams v. Burns,* 463 F.Supp. 1278, 1282 (D.C. Colo. 1979), the Court denied the plaintiff's motion to dismiss on the grounds that he cannot be held vicariously liable for the alleged malicious slander by his law partner regarding to advice the law partner gave a client. Relying on § 7-60-113, the Court determined that the plaintiff was rightfully held accountable for the wrongful acts of his partner committed in the ordinary course of their law practice. *Id.; see also Hughes v. Johnson,* 764 F.Supp.1412, 1413 (D. Colo. 1991)(denying a guiltless law partner's motion for summary judgment because, under Colorado partnership law, liability is imposed "even though the party has played no part in the wrongdoing").

I conclude that Fischer's fraudulent actions in forging the order, as alleged, were plausibly within the course and scope of the partnership business – the practice of law. *See generally* 70 A.L.R.3d 1298 ("a partnership, or every member thereof, is ordinarily liable for a tort committed by one of the members acting within the scope of the firm's business, even though the persons sought to be charged did not participate in, ratify, or have knowledge of such conduct"); *Am. Jur. Partnership* § 414 ("[p]artners are jointly and severally liable for intentional torts committed by a partner in the course and scope of the partnership business"). Therefore, I conclude that ISR has

8

alleged sufficient facts to make a claim upon which relief can be granted based on partnership liability pursuant to Section 7-60-113.

### B.  Negligent Supervision Claim:

Faegre & Benson next asserts that ISR's claim for negligent supervision (Third Cause of Action) must be dismissed because ISR's complaint fails to allege that Faegre & Benson knew or had reason to suspect that Fischer would commit forgery.

To establish liability for negligent supervision, the plaintiff must prove that the employer has a duty to prevent an unreasonable risk of harm to third persons to whom the employer knows or should have known that the employee would cause harm. *Keller v. Koca,* 111 P.3d 445, 448 (Colo. 2005); *Moses v. Diocese of Colorado*, 863 P.2d 310, 329 (Colo. 1993); *Destefano v. Grabrian*, 763 P.2d 275, 286-88 (Colo. 1988)(adopting doctrine of negligent supervision in Colorado).  An employer "who knows or should have known that an employee's conduct would subject third parties to an unreasonable risk of harm may be directly liable to third parties for harm proximately caused by his conduct." *Id.* at 288.

ISR has asserted no facts which could plausibly lead to a conclusion that Faegre & Benson should have known that Fischer would act fraudulently in the course of his practice of law.  There are no factual allegations that would give rise to the inference that Faegre & Benson was on notice the Fischer would fabricate an order, or commit some other fraudulent act, in the course of his law practice.

However, ISR does allege Faegre & Benson knew of the actual forgery committed by Fischer in this case.  As discussed above, ISR specifically alleges that "Defendants fabricated a

Certificate Of Stay Of Judgment/ Release Of Judgment Lien." Such allegations, when taken as true when reviewing a motion to dismiss, are sufficient to support the claim that Faegre & Benson knew that Fischer's actions would cause harm to a third party. Accordingly, ISR has stated a claim for negligent supervision.

**C.  Conspiracy Claim:**

Next, Faegre & Benson asserts that ISR has failed to state a claim against it for conspiracy (Seventh Cause of Action).  To establish a civil conspiracy under Colorado law, "a plaintiff must show:  (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result."  *Nelson v. Elway,* 908 P.2d 102, 106 (Colo. 1995)(*citing Jet Courier Serv., Inc. v. Mulei,* 771 P.2d 486, 502 (Colo.1989)); *see also Double Oak Const. v. Cornerstone Dev., supra*, 97 P.3d 140, 145 (Colo. App. 2003).

ISR alleges that Faegre & Benson and Fischer "had an agreement to create the Fabricated Order and wrongfully record it." ISR further alleges in its amended complaint that Fischer acted with the authority of other partners of Faegre & Benson. These allegations, when taken as true, consist of "enough facts to state a claim to relief that is plausible on its face." *TON Services. v. Qwest, supra*, 493 F.3d 1235.

**D.  Declaratory & Injunctive Relief Claims:**

Finally, Faegre & Benson asserts that ISR's requests for declaratory relief (Ninth Cause of Action) and for injunctive relief (Tenth Cause of Action) should be dismissed for lack of a controversy.  I agree.

ISR alleges that there is an actual controversy between the parties in that "Defendants have taken the position that the fabricated order is a true and correct order of this Court and is properly filed with the Boulder County Clerk and Recorder." ISR also alleges that Defendant Carol Heumann has inaccurately taken the position that a quit claim deed subsequently filed on March 8, 2007 – that purports to transfer her interest in the Boulder County real property to Defendant Norman Heumann – is proper.  As such, ISR seeks declaratory relief that the fabricated order was never issued by this Court and was improperly filed, and that the quit claim deed was a fraudulent transfer that should be voided.  ISR also seeks injunctive relief in the form a ruling prohibiting future disposition of the Boulder County real property.

However, it is undisputed that all of the parties agree that the order was fabricated and it was improperly filed.  Furthermore, to the extent that ISR asserts that the Heumann's March 8, 2007 quit claim deed was improper, such allegations do not implicate Faegre & Benson. Therefore, there is no actual controversy underlying ISR's declaratory and injunctive relief claims as to Faegre & Benson and, as such, the claims should be dismissed.  *See generally Taxpayers Against Congestion v. Regional Transp. Dist.,* 140 P.3d 343, 346 (Colo. App. 2006)(to obtain declaratory relief, the parties must present an actual controversy).  Furthermore, to the extent the ISR seeks an order nullifying the fabricated order, such relief would be properly obtained in the prior action.

### III.  MOTION FOR SUMMARY JUDGMENT

Faegre & Benson also seeks summary judgment in its favor, pursuant to Fed. R. Civ. P. 56, on all of Plaintiff's claims against it.  Again, the motion is considered against the amended

complaint and, thus, further briefing is unnecessary.

Initially, I address and reject ISR's Objections to the Affidavit of Robert Matthews [Doc # 39], which was filed in support of Faegre & Benson's motion for summary judgment. Specifically, ISR argues that the affidavit lacks foundation in that it does not state Mr. Matthews' affiliation, if any, with Faegre & Benson. However, the affidavit fulfills the requirements of Fed. R. Civ. P. 56(e), which provides that affidavits filed in support of summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Although the affidavit does not indicate that Mr. Matthews' assertions therein are based on his status as a partner at Faegre & Benson, ISR does not challenge that it is "based on personal knowledge." Moreover, an affidavit filed by ISR in this matter acknowledges that "Robert L. Matthews is a partner at the law firm of Faegre & Benson LLP." Under these circumstances, I conclude that Mr. Matthews' affidavit is sufficient pursuant to the requirements of Fed. R. Civ. P. 56(e). *See generally Charles v. Wichita Eagle & Beacon Pub. Co.*, 40 F. Supp. 2d 1287, 1290 (D. Kan. 1999).

The purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary. *White v. York Int'l. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Id.* at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex Corp. v. Catrett, supra*, 477 U.S. at 324.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Id.* at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Id.* at 252; *Mares v. ConAgra Poultry, supra*, 971 F.2d at 494.

**A. Claims Based On Vicarious Liability:**

In support of its motion seeking summary judgment on ISR's claims grounded in vicarious liability, Faegre & Benson asserts that the additional "facts" alleged by ISR in its amended

13

complaint are not supported by any evidence and, as a result, there is no disputed issue of material fact that would impose liability in this case. ISR's claims against Faegre & Benson based on vicarious liability are: recording fraudulent documents; fraudulent transfers; fraud; negligent misrepresentation; contempt; and vicarious liability.

I first note that even when considering the additional allegations in ISR's amended complaint, I agree with Faegre & Benson that ISR has failed to met its burden of showing that disputed material fact exist as to whether Faegre & Benson actively participated in or even knew of the fabricated order forged by Fischer. Nonetheless, Faegre & Benson's liability under Colorado partnership law is implicated because I have found that the alleged wrongful acts of Fischer are within the "ordinary course of the business of the partnership" under Section 7-60-113 and, under Colorado law, liability is imposed even when the parties have played no part in the wrongdoing.

However, I agree with Faegre & Benson's argument that even assuming that ISR could establish liability on its fraud, negligent misrepresentation and contempt claims based on partnership liability, these claims must be dismissed because ISR cannot establish any damages. Faegre & Benson asserts that the fabricated order resulted in no actual damages to ISR in that Plaintiff was eventually awarded a judgment in the prior action against Defendant Heumann and that judgment was paid in full. ISR never attempted to execute on the judgment and, as a result, Faegre & Benson maintains that the fabricated order never impeded ISR's ability to have that judgment satisfied.

ISR does not dispute that it is not entitled to actual damages on these claims, but instead

argues that it is entitled to punitive damages and attorney fees in this lawsuit, as well as the attorneys fees incurred by ISR in the prior action. I disagree.

First, ISR relies upon Colorado Revised Statute Section 38-35-109(3), which provides that any person who knowingly files a forged document purporting to affect the title to real property "shall be liable to the owner of such real property for the sum of not less than one thousand dollars or for actual damages caused thereby, whichever is greater, together with reasonable attorney fees." However, the statute specifically limits damages under this statute to "the *owner* of such real property" and, as such, does not provide ISR with a remedy.

ISR also asserts it would be entitled to punitive damages. Colorado law provides that when a jury awards damages for a wrong attended by circumstances of fraud, the jury may award reasonable exemplary damages in addition to the actual damages sustained. Colo. Rev. Stat § 13-21-102(1)(a). The statute further provides, however, that "[t]he amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party." *Id.* As such, the statute "permits an award for punitive damages only in conjunction with an underlying and independent 'civil action' in which actual damages are assessed for some legal wrong to the injured party." *Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 214 (Colo. 1984); *see also Culpepper v. Pearl Street Bldg., Inc.,* 877 P.2d 877, 882 (Colo. 1994)"[e]xemplary damages are not recoverable without proof of actual damages"); *Western Cities Broadcasting, Inc. v. Schueller*, 830 P.2d 1074, 1077 (Colo. App. 1991)("[a]ctual damage is an essential element of a fraud claim").

Finally, I am not convinced by ISR's assertion that it is entitled to the unawarded attorney

15

fees it incurred in the prior action in that such fees constitute damages related to the forgery and filing of the fabricated order. ISR's attenuated argument is based on its assertion that it was "cheated" or harmed by Fischer's actions in that the filing of the fabricated order allowed Heumann the ability to pursue the litigation in the prior action.

In support of this argument, ISR cites *Double Oak Construction, L.L.C. v. Cornerstone Development International, L.L.C.*, *supra*, 97 P.3d at 150, where a plaintiff was awarded attorney fees as actual damages under the theory that, but for defendants' obdurate conduct in violation of the Colorado Uniform Fraudulent Transfer Act, Colo. Rev. Stat. §§ 38-8-101, *et. seq.*, and their related conspiracy, plaintiff would not have incurred attorney fees in pursuing its judgment. Here, however, the attorney fees sought do not relate to any attempt to execute on the underlying judgment; rather, they are the excess fees incurred in defending a lawsuit that ISR speculates would not have been pursued but for the improper release of the judgment lien. Even assuming that Heumann could not have advanced her case without the release of the lien, it is uncontested that ISR ultimately prevailed in that case, including an award of related attorney fees, that was subsequently paid in full. As such, ISR claims for recording fraudulent documents (First Cause of Action); fraudulent transfers (Second Cause of Action); fraud (Fourth Cause of Action); negligent misrepresentation (Fifth Cause of Action); contempt (Eighth Cause of Action); and vicarious liability (Eleventh Cause of Action) must be dismissed, and summary judgment should enter in favor of Faegre & Benson, because ISR cannot establish any damages.

**B. Negligent Supervision Claim:**

Faegre & Benson also asserts that it is entitled to summary judgment on the negligent

supervision claim. Even when considering the tenuous additional allegations asserted in ISR's amended complaint, I agree that Faegre & Benson is entitled to summary judgment on the negligent supervision claim. Based on all evidence submitted, when viewed in a light most favorable to ISR, I conclude that no reasonable juror could find by a preponderance of the evidence that the ISR is entitled to a verdict on its negligent supervision claim.

In Fischer's letter admitting that he forged the fabricated order – which I note was against his penal and pecuniary interests – he specifically indicated that "the improper conduct was committed by me without assistance from any other person. Neither Ms. Heumann nor anyone at the law firm of Faegre & Benson had any involvement in this improper conduct." In his affidavit, filed in support of Faegre & Benson's motion for summary judgment, Fischer states as follows: "At no time leading up to the fabrication of the Order did Faegre [& Benson] 'intensify its pressure on [me] to get its bill paid'" and "I was never under the impression, and no one ever indicated to me in words or substance, that my job or partnership interest in Faegre [& Benson] were in jeopardy should Heumann fail to pay her bill." Further, "[p]rior to April, 2001, I am not aware of anyone associated with Faegre [& Benson] who knew that I had fabricated the Order" and prior to that time "I did not tell anyone associated with Faegre [& Benson] about the Order and I did not disclose the Order to anyone at Faegre [& Benson]." Fischer further averred that he kept all documents related to the fabricated order out of the file and hidden from Faegre & Benson. Fischer was, as far as he knew, the only one aware of the fabricated order and Faegre & Benson did not authorize, make an agreement or support its creation; "[o]n the contrary, that decision was made by [Fischer] alone." Finally, Fischer averred that he was not aware of any facts that would have cause Faegre & Benson to suspect or know about the fabricated order, or

17

any facts that would have caused Faegre & Benson to suspect or know that Fischer would fabricate such an order.

In response, ISR's "evidence" in support of its claims against Faegre & Benson consists of the following. First, ISR notes that Faegre & Benson has failed to file an affidavit from any of the lawyers and/or employees who worked with Fischer on the prior action during the time that he forged the fabricated order. ISR also asserts that Faegre & Benson "should have investigated" the $90,000 payment made by Defendant Heumann to secure the stay of execution, in order to expose the fabricated order. In addition, ISR argues that I should "disregard" Fischer's affidavit "since it comes from an admitted liar." Finally, ISR notes that other employees at Faegre & Benson worked on the prior action at the time of the forgery, and that two of the associates who worked on the case are no longer practicing law.

ISR's "evidence" and the fair inferences made therefrom, even when viewed in the light most favorable to ISR, do not constitute facts sufficient to demonstrate the existence of a genuine factual issue to avoid summary judgment. None of the evidence contradicts Fischer's consistent and unambiguous assertion – made against his own interests – that he acted alone and that no one at Faegre & Benson knew about or authorized his actions. Instead, ISR's "evidence" consists of unsubstantiated allegations, conjecture and mere speculation. Therefore, I conclude that ISR has failed to meet its burden to put forth evidence of a genuine issue of material fact sufficient to warrant a verdict in its favor on its claim for negligent supervision. *See* Fed. R. Civ. P. 56(b); *Anderson v. Liberty Lobby, supra,* 477 U.S. at 249-250 ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party . . . [i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted")(citations omitted).

## C. Conspiracy Claim:

Based on the same reasoning, I likewise agree with Faegre & Benson that it is entitled to on ISR's conspiracy claim against it. Even when viewed in a light most favorable to ISR, I conclude that no reasonable juror could find by a preponderance of the evidence that it is entitled to a verdict on its claim that Faegre & Benson conspired with Defendant Fischer to forge and/or file the fabricated order.

The contention that Fischer acted in concert with Faegre & Benson, contained in ISR's complaint and amended complaint, is unsupported by any evidence or factual basis. In fact, as discussed above, such claim consists of unsupported allegations that are contradicted by the evidence. As such, I again conclude that ISR has failed to meet its burden to put forth evidence of a genuine issue of material fact. *See* Fed. R. Civ. P. 56(b); *Anderson v. Liberty Lobby, supra*, 477 U.S. at 249-250; *Nelson v. Elway, supra*, 908 P.2d at 106 ("[t]he court will not infer the agreement necessary to form a conspiracy; evidence of such an agreement must be presented by the plaintiff").

## IV.  CONCLUSION

As a result, I conclude that ISR has failed to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), on its claims against Faegre & Benson for Declaratory Relief (Ninth Cause of Action) and Injunctive Relief (Tenth Cause of Action). In addition, I conclude that Faegre & Benson is entitled to summary judgment in its favor on ISR's claims against it for:  Recording a Fraudulent Document under Section 38-35-109 (First Cause of

Action); Fraudulent Transfers (Second Cause of Action); Negligent Supervision (Third Cause of Action); Fraud (Fourth Cause of Action); Negligent Misrepresentation (Fifth Cause of Action); Conspiracy (Seventh Cause of Action); Contempt (Eighth Cause of Action); and Vicarious Liability (Eleventh Cause of Action).

ACCORDINGLY, for the reasons set forth above, IT IS HEREBY ORDERED as follows:

1) Defendant Faegre & Benson's Motion to Dismiss All Claims [**Doc # 11**] is GRANTED IN PART AND DENIED IN PART as follows:  Plaintiff Infant Swimming Research Inc.'s ninth and tenth claims for relief are DISMISSED against Defendant Faegre & Benson WITH PREJUDICE;

2) Defendant Faegre & Benson's Motion for Summary Judgment [**Doc #32**] is GRANTED IN PART AND DENIED IN PART as follows: SUMMARY JUDGMENT ENTERS in favor Defendant Faegre & Benson on Plaintiff Infant Swimming Research Inc.'s first, second, third, fourth, fifth, seventh, eighth and eleventh claims for relief; and

3) This action is DISMISSED against Defendant Faegre & Benson with costs awarded to Faegre & Benson.

Dated: November   6  , 2007,  in Denver, Colorado.

                                                  BY THE COURT:

                                                    s/Lewis T. Babcock
                                                  LEWIS T. BABCOCK, JUDGE